M'Dowl and wife, *against* G. Charles.

Where a bill is filed by husband and wife, for a demand in right of the wife, and the husband dies, the suit does not abate, but the action survives to the wife.

Though generally a bill by a creditor, or a person entitled to a distributive share of personal estate, will not lie against a debtor to the estate ; yet, where the plaintiff and defendant were the only children and heirs of their mother, who died intestate, and the defendant, who was indebted, by bond and mortgage, to the estate, would not administer, and there were no creditors of the estate, or other person entitled to the administration : *Held,* that the plaintiff might sue the defendant for the moiety of the fund or debt in the hands of the defendant.

So, where there is fraud or *collusion* between the executor and debtor, or insolvency, lapse of time is not ground of *demurrer* to a bill. It is matter of evidence, and not an absolute bar, and may be set up in the defendant's answer.

*May 13th.* THE bill, filed *November* 13, 1816, by *M'Dowl*, and *Eleanor* his wife, stated, that the wife was one of the children and heirs of *Mary Charles*, deceased. That on the 28th of *April*, 1795, the defendant borrowed of her 400 dollars, and gave his bond, payable on the first of *September*, 1797, and, as security for the payment, executed to her a mortgage on a lot of land in *Albany.* The mortgage, which contained a power of sale, was registered the 15th of *July*, 1813. No part of the principal or interest had ever been paid. *Mary C.* died on the 31st of *August,* 1808, intestate, leaving the plaintiff, *Eleanor,* and the defendant, her only children and heirs at law. On the death of *Mary C.* the defendant entered into possession of the mortgaged premises, which he has refused to relinquish. On the third of *June*, 1813, administration of the estate of *Mary C.* was granted to the plaintiff,

*John M'D.;* and the defendant, afterwards, procured the letters of administration to be revoked, and no others have since been granted. The plaintiffs intermarried the 15th of *October,* 1799. The plaintiffs applied to the defendant for payment to them of a moiety of the bond, or for a surrender of a moiety of the mortgaged premises, which he refused, pretending that the bond was paid, which was denied by the bill. *Prayer,* that the defendant be decreed to pay to the plaintiffs half of the amount of the principal and interest due on the bond, or that so much of the mortgaged premises be sold as will be sufficient for that purpose; or that the right of the defendant to one moiety of the premises be foreclosed, and for general relief. The defendant, on the third of *July,* 1818, filed a *demurrer* to the bill, and stated the following causes of demurrer : 1. Because, the bill contains no equity. 2. Because, the administrator of *Mary C.* is not made a party. 3. Because, the bill states no cause why the letters of administration were revoked, or other letters of administration have not been granted. 4. Because, the bill does not aver that no letters of administration were granted prior to those which were revoked. 5. Because, the plaintiffs show no right to institute a suit. 6. Because, the demand has become stale by lapse of time, and no fact is stated to rebut the presumption of payment.

After the demurrer, the plaintiff, *John M'D.,* died, in *December,* 1821.

T. *Van Vechten,* for the plaintiff, *E. M'D.,* contended, 1. That the suit had not abated by the death of *John M'D.* His wife alone was beneficially interested in the bond and mortgage, and the debt not having been reduced into possession of the husband, in his lifetime, the right of action survives to her, and the suit does not abate. (2 *Madd. Ch.* 397, 398. 3 *Atk.* 726. 3 *Ch. Rep.* 40. 2 *Freeman,* 183.)

2. The bill was filed 19 years after the time of payment specified in the bond and mortgage; and *twenty* years are required to raise the presumption of payment; but that presumption may be rebutted by facts which go to destroy it. Besides, there must be a lapse of twenty years, exclusive of the period of the plaintiff's disability. (2 *Cranch*, 180. 4 *Cranch*, 415.)

3. The letters of administration granted to *John M'D.*, were revoked, and, as *Mary C.* died, without leaving any debts, there was no *creditor* who could take out administration; and the defendant is the only debtor to the estate. The plaintiff, *Eleanor*, could not take out administration, without her husband's permission. (*Bl. Rep.* 801.)

*H. Bleecker*, contra. He cited *Cooper's Equ. Pl.* 119. *De Hart* v. *Gard*, *Addison's Rep.* 344. *Peake's Ev.* 24, 25.

THE CHANCELLOR. Two points arise in this case:

1. Whether the suit was abated by the death of *John M'Dowl*, the husband, since the demurrer was put in; and, if not, then,

2. Whether the demurrer ought to be allowed?

1. The bill was filed to recover a distributive share of assets due to the wife, as one of the children of *Mary Charles*, deceased, and there can be no doubt of the fact, that the cause of action has survived to the wife. The demand was entirely in her right, and was in the nature of a *chose in action;* and as it was not reduced to possession, during the lifetime of the husband, his representatives have no right of action. The statute (*L. N. Y.* Vol. I. 488.) provides, that a suit in this Court shall not abate, if one of two or more plaintiffs dies, provided the cause of action survives; and it is sufficient to suggest and satisfactorily show the death to the Court. The same point has

been repeatedly decided, and is now settled in the *English* Chancery practice. (3 *Ch. Rep.* 23. *Pary* v. *Juxon*, 3 *Atk.* 726. *Anon.*)

2. The objection to the bill is, that here is a party entitled as heir to a distributive share of the personal estate of her mother, suing the debtor and co-heir to that estate, to account to her for her proportion of the fund in his possession. The general rule is against the action, and the only inquiry is, whether the circumstances stated in the bill, do not constitute a special case sufficient to authorize such a suit.

The plaintiff and the defendant are the only persons interested in the fund, and the husband of the plaintiff once obtained letters of administration upon the estate of *Mary Charles,* but those letters were revoked by the procurement of the defendant, and none others have since been granted. It is to be presumed, from the facts charged in the bill, and admitted by the demurrer, that no person has administered upon the estate, and that there are no creditors of the estate, nor any other person but the plaintiff entitled to call the defendant to account. The case warrants the inference, that the defendant does not wish or intend to account to any human being for the debt which he owes the estate. If the plaintiff cannot sue, there is no person to call the defendant to account, and the plaintiff is to lose her whole share of the fund. It is a peculiar case, and one in which, taking the facts in the bill to be true, the plaintiff ought to be permitted to sue ; and, if we examine the adjudged cases on this point, we shall appear to be well authorized to consider this case as one of several exceptions to the general rule.

In *Beckley* v. *Dorrington,* in 1737, (cited by Lord *Eldon,* in *Alsager* v. *Rowley,* 6 *Vesey,* 749. from a MS. note,) Lord *Hardwicke* held, that a residuary legatee could not sue the executor and another residuary legatee and a debtor, unless in the case of collusion between the executor

*1822.*

M'DOWL
v.
CHARLES.

and the debtor, or of insolvency in the executor, " or some special case," otherwise, it would overthrow all the law relating to *devastavits*, and the rights and property of executors. In the present instance, there is not the charge of collusion or insolvency ; but here is a special case in which there is no personal representative of the intestate, and a case in which the husband of this very plaintiff was once appointed administrator, and the defendant procured that administration to be revoked. In *Newland* v. *Champion*, (1 *Vesey*, 105.) Lord *Hardwicke* stated the same general rule, that the creditor must resort to the personal representative, but that in case of collusion between the executor and the debtor, and in case of partnerships, the creditor might follow the assets, and make the person in possession of them a party. Many bills, he observed, were brought, not only against the representative, but against other persons who had possessed themselves of the estate.

The general rule, and the exception to it, in case of collusion, were equally admitted in *Elmslie* v. *M'Aulay*, (3 *Bro*. 624.) In that case, the Master of the Rolls dismissed the bill by a creditor of *A*. against *B*., who was in possession of part of the assets. He observed, that if it were maintainable by every single creditor upon the fund, it would be so against every individual debtor to the fund, and this would lead to an infinite number of suits ; but that a case of collusion between the executor and the debtor would support the bill.(a) Again, in *Utterson* v. *Mair*, (2 *Vesey*, jun. 95. 4 *Bro*. 270.) the general rule was declared, that the executor was liable to the creditor, and the debtor to the executor, and that if every creditor was entitled to his bill against every debtor, the accounts would be inextricable and suits oppressive. The demurrer to the bill by the assignee of the debtor was allowed, but it is to be ob-

*a* Vide *Cooper's Pl.* 175, 176. *Doran* v. *Simpson*, 4 *Vesey*, jun. 651.

served, that in neither of these two last cases were there any special circumstances to warrant a departure from the general rule. Lord *Eldon*, afterwards, in *Alsager* v. *Rowley*, (6 *Vesey*, 748.) admitted collusion and insolvency of the executor to be exceptions to the rule which prevailed, as he said, in *ordinary cases*, that the debtor could not be made a party to a bill against the executor. But in *Burroughs* v. *Elton*, (11 *Vesey*, 29.) he went further, and admitted, that in a case where the representatives of the estate could not or would not act, the creditor might sue the person in possession of the fund, and accountable for the assets, for otherwise the property would not be amenable to the debts. This is the very doctrine that applies to the present case. Here is no personal representative to act, and to call in the assets possessed by the defendant. The difficulty is as fatal to the plaintiff's rights as if there was an administrator, who was in collusion with the defendant. It is a stronger case than any that have been stated. There is no administrator *in esse*, and if the plaintiff may not sue, how is she to obtain her moiety of the fund which the defendant possesses ? The latter procured her husband to be devested of his power to sue as administrator, and there is nothing in the bill to warrant an inference that any other person than the plaintiff has any interest in the subject, or any power to call the defendant to account.

This objection forms the substance of the demurrer; for as to the lapse of time, that is not a ground for demurring to the bill. It is short of twenty years, between the time when the bond fell due and the commencement of the suit; and even if it went beyond that time, the delay may be accounted for, and the presumption of payment repelled. It is matter of evidence, and not a case of an absolute bar under the statute of limitations. The defendant may set up the lapse of time in his answer, and the plaintiff will have an opportunity to repel any inference to be deduced from the age of the demand; and that opportunity

she would be deprived of, if the demurrer was to be sustained.

· I shall, accordingly, overrule the demurrer, and direct the defendant to answer in six weeks, and reserve the question of costs.

Decree accordingly.