ROBINSON, ET AL. V. ROBINSON.

1. It is no ground for the interference of a court of chancery, that slaves administered upon in the State of Tennessee, are brought to this State, by the widow of the deceased, under a claim of title, with the consent of the administrator, unless the Orphans' Court should refuse the temporary letters of administration which the statute authorizes to be granted in such a case.

Writ of Error to the Chancery Court of Perry.

THE bill filed by the plaintiffs in error, charges, that Samuel Robinson, late of Shelby county, Tennessee, died, leaving a widow, Mary Robinson, who was his second wife, and by whom he had no children.   That complainants are his children, and heirs by a former marriage.   That their father died seized and possessed of a large amount of property, real and personal, and among the rest, of certain slaves, which are described.   That one John Wherry administered on the estate, which was almost wholly free from debt, and is now entirely solvent.   That the widow, setting up an exclusive claim to the slaves mentioned in the bill, has with the connivance and consent of the administrator, taken possession of the slaves aforesaid, and clandestinely brought them to this State, with the aid of one James Wherry, and now has them concealed in Perry county in this State, for the purpose of defrauding complainants.   That these slaves belonged to

their father. at his death, and are subject to distribution. That the administrator and his sureties are almost worthless, and not able to respond to complainants for the loss of the slaves, &c. The prayer of the bill is for distribution according to law, for a *ne exeat*, &c. Mary Robinson, the widow, and James Wherry, are defendants to the bill. An attachment in the nature of a *ne exeat* was awarded, and bond and security given by the complainants according to the *fiat* of the circuit judge.

The answer of Mary Robinson admits the material allegations of the bill, but denies that the administrator administered on these slaves, to which she sets up a title under the will of her father, executed in South Carolina, on the 2d May, 1824. That she was married to the deceased in 1832, and that they lived together until 1842. The slaves in controversy are the slaves, and the descendants of the female, left to her by her father. She renounces all claim to the residue of the estate. The defendants demurred to the bill, and assign as causes of demurrer—

1. The object of the bill is double, in seeking relief against the administrator, and also against respondent in her private right.

2. That the bill contains no prayer for relief which the court could grant.

The chancellor considered, that there was ample relief at law, and dismissed the bill, from which decree this writ is prosecuted.

A. GRAHAM, of Perry, for plaintiff in error, contended that the bill was maintainable, because, as the administrator had not taken possession of the slaves, nor claimed them as assets, the heirs could not sue him, and that as he had colluded with the widow, and permitted the property to be brought to this State, where it was concealed, a court of equity could alone grant relief. [Calhoun v. King, 5 Ala. 523; 1 Stew. 536; Hendrix v. Robinson, 7 Dana, 165; Thomas v. White, 3 Littell, 177; Isaac v. Humphreys, 1 Vesey, 430; Marr v. Southwick, 2 Porter, 370.]

Letters of administration vest title in the administrator to

the property, in the State, at the time of the death, but not to that which is brought in afterwards, and such is the express provision of the statute of this State. [Jewett v. Smith, 12 Mass. 309; Story on Con. of L. § 516; Embry v. Miller, 1 Mar. 303; Henderson v. Clark, 4 Litt. 277.]

Chancery has concurrent jurisdiction with the orphans' court. [5 Ala. *supra;* Mitford, 126; Leavens v. Butler, 8 Porter, 380; Williamson v. Branch Bank, 7 Ala. 906; Blakey v. Blakey, 9 Ala. 391; Harrison v. Harrison, Ib. 477; Treadwell v. Rainey, Ib. 590.]

In any event, chancery will retain the cause, if the circumstances require it, until an administrator can be appointed, if one is necessary.

A. B. MOORE and I. W. GARROTT, contra.

If the admistrator has acted, as charged in the bill, he is liable on his bond for a *devastavit,* and should have been proceeded against in Tennessee. [Cook's R. 200; Wright v. Wright, 2 McCord, 199.]

The bill is filed prematurely, as the distributees are not entitled to distribution by the laws of Tennessee, until after the lapse of two years.

The chancery court has no power to appoint an administrator, as that is vested exclusively in the orphans' court, [Clay's Dig. 301, § 22,] and the only bill which could have been filed, is a bill *quia timet,* to prevent the destruction of the property pending the litigation. [Harrison v. Harrison, 9 Ala. 479.]

The orphans' court has power to grant letters of administration in such cases as this, but it will be ancillary to the administration in Tennessee. [Clay's Dig. 303, § 33; 222, § 10; Story C. of L. § 518; Treadwell v. Rainey, 9 Ala. 590; Orcut v. Orms, 3 Paige, 459; Baines, adm'r, v. Brashears, 2 B. Mon. 384; Fenwick v. Lewis, 1 Cranch, 259.]

This suit cannot be maintained, being instituted before grant of letters of administration in this State. The letters granted in Tennessee can have no effect here. [Jenkins v. Fryer, 4 Paige, 47; Wooden v. Bagley, 14 Wend. 453; Bradford v. Felder, 2 McCord, 168; Story Con. of L. § 514; Logan v. Fairlie, 2 Con. Eng. Ch. 459; Riley v. Riley, 3 Day's

Cases, 74; Brumley v. Duke, 1 Rand. 108; Buff's adm'r v. Price, C. & N. 68; Jackson v. Jeffries, 1 Marsh. 88; Thompson v. Wilson, 2 N. H. 291; Fenwick v. Lewis, 1 Cranch, 258; Campbell v. Toucey, 7 Cow. 34.]

ORMOND, J.—The jurisdiction of the court of chancery, to make distribution of the slaves in controversy, is attempted to be maintained, because the slaves never came to the possession of the administrator in Tennessee, but that he has colluded with the widow of the deceased, and permitted her to bring the slaves in controversy to this State, although they are assets of his intestate. That suit cannot be brought in the name of the administrator, as they never came to his possession, and that no administration can be granted here, because the slaves were not in this State, at the time of the death of the intestate.

The foreign administrator certainly cannot sue in this State for the recovery of these slaves, in virtue of his letters granted in Tennessee, unless he proceeds according to the statute, and records his letters in this State; and as he is required to execute a bond, and deposit it in the proper orphans' court, before he receives the effects, it is in effect an ancillary administration. [Clay's Dig. 227.] The same act provided for the appointment by the orphans' court, of an administrator in this State, in such a case; that is, where the intestate had no known place of residence in any county of this State, administration may be granted in any county, where the goods and chattels, and debtors, or any part thereof, of such testator or intestate may be. [Clay's Dig. 303, 33.] It is therefore very clear, that such a case as this, is expressly provided for by the statutes cited. The doctrine contended for, that the orphans' court has no jurisdiction unless the property was in this State at the time of the death of the intestate, is not warranted either by the terms of our acts previously cited, or by the object to be effected by the law, as the necessity for a representative of the estate, would be the same, whether the property was here at the death of

the intestate, or was sent, or as in this case, brought here afterwards.

In Logan v. Fairlie, 2 Sim. & Stu. 282, the vice chancellor held, that where an executor in India sent money to England to discharge legacies there, a suit could not be maintained in chancery for the legacy, unless administration had been taken out in England, and the administrator made a party to the suit. In that case, it is to be observed, there was no specific appropriation by the executor of the money to the payment of the legacies: the money was therefore held to be assets of the estate, about which no decree could be made, until an administrator was appointed. See also cases on brief of the defendant in error.

In this, as in other instances of general rules, there may be possible exceptions, and such appears to be the case where the executor colludes with a debtor of the estate, there a creditor may be allowed in equity to proceed against the assets in the hands of the debtor. And in England, it seems the insolvency of the executor, and his refusal or inability to act, might also be a sufficient reason for permitting the creditor to sue. [Alsager v. Rowly, 6 Ves. 748; Burroughs v. Elton, 11 Id. 29.] But in these cases, it is to be observed, there was a legal representative of the estate, who was either unable or refused to act, and if the creditor had not been permitted to proceed against the assets, he would have been without remedy.

The case of McDowel v. Charles, 6 Johns. Ch. 132, is an instance, where a bill was permitted to be filed, where there was no legal representative. There, there were but two persons entitled to representation, and the one in possession of the fund, procured the husband of the other to be removed from the administration, and if she could not sue in equity, she was without remedy, as there were no creditors to take out letters of administration. This case only proves, that the rule must yield to the stern necessity of the case, where it is necessary to prevent a failure of justice. No such necessity exists here, as the plaintiffs will themselves be entitled to administer if the widow refuses.

The courts of chancery of this State have no power to grant letters of administration; that is conferred on, and be-

longs exclusively to the orphans' court. [Clay's Dig. 301, §
22.] The concurrent power of the chancery court, to take
jurisdiction with the orphans' court of the settlement of es-
tates does not attach until a representative of the estate is
appointed by the orphans'court. Until that is done, no ques-
tion concerning the estate can be litigated, as there is no one
representing the property of the deceased.

The distinction between this case and that of King v.
Calhoun, 5 Ala. 523, is, that there administration had been
granted in Georgia, and the administrator having brought the
assets to this State, and they being about to be sold for the
payment of his debts, after his decease, chancery interposed
to prevent the destruction of the fund, until the estate could
be settled, and the amount in the hands of the administrator
for distribution ascertained. [See also, Treadwell v. Rai-
ney, 9 Ala. 590.]

From these considerations, it appears, that no decree can
be made in a case circumstanced like the present. We
thought at first, however, that the bill might be considered
as a bill *quia timet*, and retained to enable the complainants to
take out letters of administration, there being strong grounds
to apprehend from the previous conduct of the parties, that
the slaves would be removed from the state, pending the ap-
plication for letters from the orphans' court, and we so an-
nounced our judgment. Since then, and during this court,
the same question has again come under consideration in the
case of Watson v. Bothwell, and further reflection has satis-
fied us, that there is no ground for the jurisdiction of chance-
ry, to entertain the bill for any purpose.

A statute of the state, not brought to our notice in the ar-
gument of this cause, fully provides for the exigency of such
a case as the present, and renders a resort to chancery unne-
cessary. The act declares, that " during any contest about
the validity of a will, the infancy, or absence of the executor,
or administrator, *and in such other cases not otherwise pro-
vided for*," a temporary administrator may be appointed,
with such limited authority as the case may require, and
when necessary, " such administration may be granted forth-
with, without any citation." [Clay's Dig. 222, § 10.] Un-

der this statute it is difficult to conceive of a case in which the orphans' court, could not give as full redress, as a court of chancery. The temporary administrator being invested with the legal title, could by suit at law obtain the possession of the property, or require those holding it to give security for its production. It will be observed, that the act dispenses with citation in urgent cases, so that the remedy afforded is more prompt than an appeal to the chancellor for an injunction, and in the possible event that the judge of the orphans' court should refuse to act, chancery might interpose and afford the necessary relief.

This bill is wholly wanting in any such allegation ; no application was made to the orphans' court, and none appears to have been contemplated ; the bill is therefore wanting in equity, and should be dismissed.

Decree heretofore entered, set aside, and bill dismissed without prejudice.